ANDREW KISH AND FRANCES KISH, HIS WIFE, PLAINTIFFS-APPELLANTS, v. BERUTH HOLDING CORP., A NEW JERSEY CORPORATION, *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1961—Decided March 8, 1961.

Before Judges GOLDMANN, FOLEY and DRENK.

*Mr. Herman L. Breitkopf* argued the cause for appellants (*Messrs. Morris, Morris & Breitkopf,* attorneys).

*Mr. Henry J. Williams* argued the cause for respondents Campbell (*Messrs. Seaman & Williams,* attorneys).

*Mr. Louis K. Press* argued the cause for respondents Beruth Holding Corp. and Denise Homes, Inc.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D.  Plaintiffs appeal from a Chancery Division judgment entered in their quiet title action.  Resolution of the dispute revolved around the true location of the boundary line between the parties.  The judgment held that

"* * * the boundary line between the plaintiffs' and defendants' lands is the first course of the plaintiffs' deed; that the plaintiffs sat back and did nothing to point out their line or indicate during the time that the defendants were permitted to lay out and grade the land and to erect properties thereon under the belief that they owned the parcels up to the line set forth in the report of the Commissioners aforesaid.  That the plaintiffs are perpetually restrained and estopped from asserting their legal title against any encroachments, if there are any.  That the plaintiffs convey a strip of land in question to the defendants, payment by the defendants to the plaintiffs, to wit, approximately $200.00 to $250.00; that if plaintiffs do not accept said amount and refuse to convey to the defendants title to the disputed strip aforesaid, they are perpetually restrained and estopped from asserting their legal title against any encroachments as alleged, said restraint to extend to the line established by the Commission appointed as herein above mentioned and shall run Northerly to the end of Oakwood Terrace, Section 2, mentioned herein."

Plaintiffs contend that defendants' encroachments upon their lands were the result of a mutual mistake as to the location of the boundary, and without fault on their part.  They further argue that the relief granted by the trial court extends far beyond allowing those encroachments to remain, and that the court required them to convey much more land than was encompassed by the encroachments—an inequitable result not in accord with the discretion exercised by equity courts in similar situations.

The facts are not in dispute.  Ludwig Clauss died in 1904, devising his 40-acre lot, an irregularly shaped rectangular piece of land in the Borough of Carteret, to his wife Mary.  In 1910 she subdivided the property by drawing two interior cross-lines and conveyed the four parcels, of about 10 acres each, to her children, Helena Clauss, Michael Clauss, Elizabeth Markwalt and Emma Grover, respectively.  Plaintiffs'

title stems from the northwest quarter conveyed to Elizabeth Markwalt, and defendants' from the northeast quarter conveyed to Emma Grover. Plaintiffs' claim of encroachments by defendants involves the first course in their deed, which runs from the low-water mark in the Rahway River south 17° 3' west 478 feet, more or less, to a stake.

In 1930 Gottlieb Markwalt, Elizabeth's husband, instituted proceedings for the appointment of commissioners to determine the dividing line between the properties owned by him, Grover and one Leszczyk, grantee of part of the Grover property. The Common Pleas Court appointed three commissioners, who filed a report in June 1931 whereby they decided that the boundary line was determined by the center of Clauss Lane. They relocated the lane and fixed the boundary line accordingly. Clauss Lane terminated a short distance south of what is now plaintiffs' property. The commissioners, going beyond the scope of their authority, extended the center of Clauss Lane northerly to the Rahway River, along a line running north 18° 12' east.

At the time the commissioners fixed the line the owner of the property to the west was William Rapp, Sr., plaintiffs' predecessor in title. Since Rapp was not made a party to the boundary proceedings, the action taken by the commissioners could not bind him or plaintiffs, his successors in title.

Plaintiffs bought their property in 1951. The land to the east was purchased by Beruth Holding Corp. in April 1958. The property was thereafter laid out on a map entitled "Oakwood Terrace, Section Two." It sold a portion of the property to Denise Homes, Inc. and another portion to Rand Building Corp. Rand sold lot No. 14 in Oakwood Terrace to defendants Campbell by deed dated November 21, 1958. The westerly line of this lot abuts plaintiffs' property and runs a course of north 18° 12' east for 145.64 feet. Denise Homes conveyed lot No. 17 in Oakwood Terrace to defendants Wilkey on December 1, 1958, the westerly line abutting plaintiffs' property and running a course of north

18° 12′ east for 152.94 feet. Defendant Berkeley Savings and Loan Association holds a mortgage on lots Nos. 14 and 17. The Wilkeys lost their property through foreclosure, and defendant Denise Homes, Inc. reacquired title to lot No. 17.

Plaintiffs claim as their eastern boundary a line running south 17° 3′ west, as shown in their deed. Defendants claim as their westerly line the one established by their surveyors, who used the line fixed by the commissioners in 1931, running north 18° 12′ east. The boundary line which plaintiffs contend is the true line falls 14 to 14½ feet east of the line established by the commissioners. Hence, the disputed area between these two lines may be described as a trapezoid, some 440 feet long, about 15 feet wide on its southern base, and tapering to a narrower base as it runs northward to the Rahway River.

The trial court found that the line established by the commissioners in 1931 was not the true boundary line. Rather, the line was that contained in plaintiffs' deed and set forth in their complaint. In other words, the western boundary of defendants' lands was found to be some 14 feet further east than defendants had thought.

In the spring of 1958 defendant Beruth began to survey, grade, subdivide and develop Oakwood Terrace, Section 2. Construction of the dwellings on the two lots, now respectively owned by Denise Homes (No. 17) and the Campbells (No. 14), began in July 1958, and they were fully completed and ready for occupancy in November of that year. The house on lot No. 17 is so situated that the western portion encroaches upon plaintiffs' lands some 1.03 feet at the southwest corner and 2.10 feet at the northwest corner. The Campbell house on lot No. 14 lies to the east of plaintiffs' line, as confirmed by the Chancery Division judge, but the western part of the property, which was graded and seeded, extends over the line. George Court, a cul-de-sac street between these two lots, extends seven feet onto plaintiffs' lands at its deepest point.

██ We have reviewed the record and agree with the findings of the trial judge that plaintiffs permitted the developers to grade and lay out their lots, and while this work was going on and the dwellings were being erected did nothing to point out their line or indicate that there was any encroachment upon their property. We conclude, as did he, that whatever encroachment exists was not a deliberate and premeditated act on the part of the developers, but was done by them under a mistaken impression that the work they were performing was entirely within the boundary lines of their property. The trial judge accordingly determined that plaintiffs were estopped because of failure to assert their claims in timely fashion, and so were restrained from asserting their legal title against the encroachments.

Plaintiffs project their appeal upon the theory of mutual mistake, as set out in the leading case of *McKelway v. Armour,* 10 *N. J. Eq.* 115 (*Ch.* 1854), where complainant built on the wrong lot by mistake, believing it was the next lot that belonged to Armour. Armour labored under the same mistake. The court granted complainant relief, but in the course of its opinion remarked that if Armour had known the lot to be his, his silence was a fraud upon the complainant. *McKelway* and the many cases that have followed the doctrine there expressed are not in point, for here, as we have said, plaintiffs knew of the encroachments and yet sat back and did nothing to prevent them. The entire tenor of the findings and opinion of the Chancery Division judge points to unilateral mistake—that of defendants who, without culpable negligence, encroached upon plaintiffs' land.

██ There was no mutual mistake here. Defendants fall strictly within the test set out in our opinion in *Brick Township, Ocean County v. Vannel,* 55 *N. J. Super.* 583, 593 (1959), where we said:

"* * * [W]here a stranger to the title of realty, in good faith, under the belief of his ownership, places improvements on said lands with the knowledge of the true owner, the latter will be

denied relief in a subsequent suit for possession unless adequate compensation is made to such stranger for the reasonable cost of the improvements. Alternatively, in such a circumstance, the stranger has been permitted to obtain title to the lands upon the payment of the reasonable value thereof to the true owner. For defendant to succeed it is vitally essential that three elements be present: (1) the stranger must have been mistaken in his belief of ownership: (2) such mistake must not have resulted from the stranger's culpable negligence, and (3) the true owner must have had either actual or constructive knowledge of the construction of the improvements and yet remained silent. *McKelway v. Armour*, 10 *N. J. Eq.* 115 (*Ch.* 1854); *Riggle v. Skill*, 9 *N. J. Super.* 372, 379 (*Ch. Div.* 1950), affirmed 7 *N. J.* 268 (1951)."

*Sumner v. Seaton*, 47 *N. J. Eq.* 103 (*Ch.* 1890), involved a factual situation somewhat similar to the present one. Seaton owned a narrow, 115'-long strip of land along a street. Mrs. Sumner's mother and a predecessor in title had fenced in the strip. Mrs. Sumner acquired from her mother title to lands immediately adjacent to the strip, and thereafter she and her husband erected a dwelling about 100 feet from the street, graded and sodded the grounds, including the strip, erected a fence along the strip line, and planted trees and shrubs on the strip itself. At no time did the Sumners know that the strip was not theirs. They made improvements, confident that the entire tract was their land. Seaton, who lived immediately opposite, knew he owned the land, observed the improvements, but made no demand until years later when he commenced an ejectment suit. Vice-Chancellor Pitney, in decreeing Seaton to be perpetually enjoined from asserting his legal title, stated:

"This brings us to complainant's third ground, namely, estoppel by acquiescence and silence.

Here complainant relies upon the familiar maxim, that where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent. * * *

* * * 'There is no principle better established in this court, nor one founded on more solid foundations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase or expend money on land, under an erroneous opinion of title,

without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.' " (at *page* 111)

In the Chancery Division judgment quoted at the beginning of this opinion, the trial judge gave alternative relief: (1) plaintiffs were perpetually restrained from asserting their legal title against any encroachments, the restraint to extend to the line established by the commissioners in 1931, *i. e.,* to a line some 14 feet to the west of plaintiffs' true line, and to run northerly to the end of Oakwood Terrace, Section 2, or, in the alternative (2) plaintiffs could convey 7 feet of the 14-foot-wide strip all the way to the Rahway River on the north, defendants to pay them $200 to $250.

Plaintiffs contend that defendants were granted rights far in excess of the encroachments under either alternative, and this without a demand having been made for the same in the pleadings. It is of no moment that defendants made no specific demand for relief. It is well recognized that a court of equity, as a condition to decreeing the relief sought in the complaint, will accord to defendant whatever equitable rights he may have although not demanded by a cross-claim, and give relief to protect and enforce such rights. The basis for this is the familiar maxim that "He who seeks equity must do equity."

An examination of plaintiffs' survey, in evidence as an exhibit, clearly indicates that the restraint runs only to the end of Oakwood Terrace, Section 2, apparently the north line of Campbells' lot No. 14. However, the judgment does not indicate whether the encroachments encompassed by the restraint imposed on plaintiffs actually involved the entire width of the 14-foot strip. We do not know whether the trial judge had in mind only buildings, driveways, and like permanent improvements extending beyond the true boundary or, in addition, such parts of defendants' lands as had been graded, seeded and planted. See *Sumner v. Seaton,* above, 47 *N. J. Eq.,* at *page* 120. The matter will therefore

have to be remanded to the Chancery Division for a more specific determination of the encroachments restrained against —a matter which should be susceptible of ready proof and which can be defined by map and description.

The alternate proposal contained in the judgment under review—that plaintiffs convey half the 14-foot strip all the way to the Rahway River, a distance of some 440 feet, in return for $200 to $250 paid by defendants, cannot be justified. It involves lands to the north of defendants' property—lands with which they have nothing to do and in which they can have no possible interest. It was inequitable to require plaintiffs to convey the full length of the 7-foot strip on pain of being restrained from asserting full ownership over the 14 feet of ground lying between their true eastern boundary and the line established by the commissioners in 1930, running to the northern boundary of Oakwood Terrace, Section 2.

The matter is therefore remanded to the Chancery Division for the purpose of determining exactly what encroachments are to be included in the restraint granted defendants against plaintiffs, and for the entry of an accordant modified judgment.